1
2
3
4
5
6
7
8
9
10
11
12
13
14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LANDOVER CORPORATION, a
Washington corporation d/b/a COLDWELL
BANKER BAIN ASSOCIATES,

                    Plaintiff,

v.

BELLEVUE MASTER, LLC, a Delaware
limited liability company,

                    Defendant.

No.  C04-2407Z

ORDER

15
16
17
18
19
20
21
22
23
24
25
26

    This case comes before the Court pursuant to a Motion for Summary Judgment,

docket no. 39, by Defendant Bellevue Master, LLC, a Delaware Limited Liability Company,

("Defendant") and a Motion for Partial Summary Judgment, docket no. 41, by Plaintiff

Landover (d.b.a. Coldwell Banker Bain Associates) ("Plaintiff").  The Court heard oral

arguments on December 15, 2005.  The Court GRANTS IN PART and DENIES IN PART

Defendant's Motion for Summary Judgment, docket no. 39.  The Court GRANTS IN PART

and DENIES IN PART Plaintiff's Motion for Partial Summary Judgment, docket no. 41.

## BACKGROUND

    This is a real estate commission dispute case.  Defendant attempted to develop the

Lincoln Square project in Bellevue, Washington.  Defendant employed Plaintiff to pre-sell

approximately 148 un-built residential condominiums in the project pursuant to a

commission agreement dated November 20, 2000 (Letter of Authorization).  Defendant

ORDER  1–

1   ultimately sold the Lincoln Square development to LS Holdings, LLC ("LS Holdings") in

2   2003.  The dispute in this case involves how the sale of the Lincoln Square development and

3   the later contracts between LS Holdings and Plaintiff changed, if at all, Defendant's

4   obligations to Plaintiff under their November 2000 Letter of Authorization.

5            November 2000 Letter of Authorization Between Plaintiff and Defendant.

6            The original agreement between Plaintiff and Defendant provided that Defendant

7   would pay Plaintiff a commission of 1.4 percent of the gross sellout of the condominium

8   development.  Torgerson Decl., docket no. 46, Ex. C (Letter of Authorization).  The Letter of

9   Authorization had a duration period ending December 31, 2003, with Seller (Defendant)

10  having the right to terminate the contract at any time upon thirty (30) days written notice.

11  Id., Addendum at 3.  Upon termination, the Seller would remain obligated to pay

12  commissions to the Plaintiff for any sales on which signed purchase and sale agreements or

13  written offers had been submitted to Seller prior to the date of termination as well as

14  outstanding marketing costs.  Id.  The Seller never terminated the November 2000 Letter of

15  Authorization in writing.

16            Plaintiff procured eighty-nine (89) signed purchase and sale agreements for

17  condominium units under the November 2000 Letter of Authorization for $52,522,146.56

18  before Defendant sold the development to LS Holdings.  Torgerson Decl., docket no. 46, Ex.

19  F (Calculations).  Plaintiff claims $739,055.05 in commissions for those sales.  Id.  The

20  Letter of Authorization does not expressly state when commissions became due for the

21  eighty-nine (89) purchase and sale agreements procured by Plaintiff.

22            Sale of Lincoln Square Project to LS Holdings.

23            By agreement dated July 14, 2003, Defendant agreed to sell the Lincoln Square

24  development to LS Holdings.  McGlothin Decl., docket no. 47, Ex. H (PSA).  The Lincoln

25  Square Purchase and Sale Agreement provided that Purchaser (LS Holdings) would be

26  responsible for the payment of fifty percent (50%) "of any leasing commissions that may

ORDER  2–

become due and payable under the applicable commission agreement as a result of any of the leases listed in Exhibit C-3 being executed on or before November 1, 2003, but in no event shall Purchaser's [LS Holdings] obligations therefore exceed $150,000 in the aggregate." Id. at 16, section vii (PSA).  Exhibit C-3 references the November 2000 Letter of Authorization under which Plaintiff procured purchase and sale agreements for Defendant.  Exhibit D lists the eighty-nine (89) purchase and sale agreements procured under the November 2000 Letter of Authorization for which LS Holdings became liable to pay fifty percent (50%) of the commissions.  The sale to LS Holdings closed on August 27, 2003.  Id. at Ex. H.

November 7, 2003, Lincoln Square Commission Agreement Formed Between LS Holdings and Plaintiff.

On November 7, 2003, LS Holdings and Plaintiff entered into a new listing agreement that provided for a new commissions schedule.  Torgerson Decl., docket no. 46, Ex. G (Lincoln Square Commission Agreement).  The November 2003 Lincoln Square Commission Agreement covered all 148 condominium units in the Lincoln Square development.  Id. at Ex. H (Lincoln Square Agreement).  The November 2003 Lincoln Square Commission Agreement was entered into by Landover Corp. (Plaintiff), Miller Torgerson & Assoc., LLC, and Lincoln Square Residential, LLC.  Id.

The November 2003 Lincoln Square Commission Agreement defines "residential project" in the "Definitions" section as the "approximately 148 unit residential condominium development."  Id. at 1, section (e).  In the "Duties" section, the November 2003 Lincoln Square Commission Agreement states that Plaintiff shall "assist in the sale of the approximately 148 Units to be established at the Residential Project."  Id. at 3, section (e). The Agreement also states that Plaintiff is to "[e]ndeavor to have the buyers who contracted with the prior owner/developer of the Residential Project enter into new replacement agreements with Owner...."  Id. at 4, section (g).

The November 2003 Lincoln Square Commission Agreement between Plaintiff and LS Holdings was less favorable to Plaintiff than the November 2000 Letter of Authorization

ORDER  3–

1  between Plaintiff and Defendant.  The November 2003 Lincoln Square Commission

2  Agreement provided that LS Holdings could terminate Plaintiff at will.  Id. at Ex. G, p. 6

3  (Lincoln Square Commission Agreement).  Additionally, the November 2003 Lincoln Square

4  Commission Agreement provided a lower base commission fee than the November 2000

5  Letter of Authorization but allowed for higher net pay because of high incentive fees.  Id. at

6  4 (Lincoln Square Commission Agreement).  The Agreement provided that LS Holdings:

7  
8  
9

> shall not have or owe Broker or Agent, or any of their affiliates, any
> commissions, fees, or other obligations whatsoever, contingent or
> otherwise, notwithstanding any other agreement or agreements entered
> into with any prior owner or developer of the Residential Project or the
> larger "Lincoln Square" project.

10  Torgerson Decl., at Ex. H (Lincoln Square Commission Agreement).  LS Holdings ultimately

11  terminated Plaintiff on February 13, 2004.  Dembowski Decl., docket no. 40, Ex. R

12  (Termination Letter).  Plaintiff did not sell any condominiums under the November 2003

13  Lincoln Square Commission Agreement before LS Holdings terminated Plaintiff.  LS

14  Holdings notified Plaintiff that it did not owe Plaintiff any percentage commissions for

15  condominium unit sales beyond the commissions already paid by both Defendant and LS

16  Holdings.  Id.  Plaintiff has never argued that LS Holdings owes Plaintiff commissions and

17  LS Holdings is not a party to this litigation.

18      Whether condominium Purchase and Sale Agreements were enforceable after
December 31, 2003.

19  
20      Buyers entered into Purchase and Sale Agreements for condominiums in the Lincoln

21  Square development before construction.  If construction was not complete by December 31,

22  2003, then Buyers had the option to rescind the Purchase and Sale Agreements in writing.

23  The condominium Purchase and Sale Agreements state as follows:

24  
25  
26

> If the Unit has not been substantially completed by December 31, 2003,
> Buyer shall have, as its sole remedy for such failures, the right to
> rescind this Agreement by giving Seller written notice of revocation.
> Upon Seller's receipt of a notice of revocation, the Deposit shall be
> returned to Buyer and except as otherwise stated herein the parties shall
> have no further rights or liabilities under this Agreement.

ORDER   4–

Olympic Law Group fax, Dec. 9, 2005 (PSA for Unit 2708; PSA for Unit 1904).  See also Foster Pepper package delivered Dec. 9, 2005 (four condominium Purchase and Sale Agreements).  The parties have not stated whether any of the eighty-nine (89) buyers procured by Plaintiff rescinded their respective Purchase and Sale Agreement.

Defendant Bellevue Master's possible ongoing contractual relationship with the Lincoln Square project.

Defendant asserts that it has an ongoing contractual interest in the Lincoln Square Project.  It claims to have joint development rights with LS Holdings for development of an office tower.  Response, at n. 50-51.  Defendant cites the August 2003 Lincoln Square Purchase and Sale Agreement, but Defendant does not cite to a particular portion of the Agreement.  Defendant also cites to the deposition of Ron Smith, a representative for LS Holdings, to show that Defendant maintains an ongoing interest in a Lincoln Square office tower.  Response, at n. 50 (citing Robb Decl., docket no. 58, Ex. H (Smith Dep.)).  In his deposition, however, Smith did not expressly state that Defendant has such an ongoing interest.  In discussing whether Defendant is an affiliate of LS Holdings, Smith stated, "certainly the intent of this paragraph was to cover, not only owner as LS Holdings, but anybody we do business with, had done business with, or had ongoing contractual relationships with, such as Bellevue Master, with an ongoing interest in a portion of the Lincoln Square project."

## DISCUSSION

Subsequent to being terminated by LS Holdings, Plaintiff filed claims solely against Defendant, arguing that Defendant will owe Plaintiff the sales commissions for all eighty-nine (89) condominiums sold pursuant to the original November 2000 Letter of Authorization.  Plaintiff does not seek any monthly support fees or other "prepaid commissions" from Defendant.  Defendant moves the Court for Summary Judgment on the basis that Defendant no longer has any obligation to Plaintiff under the November 2000 Letter of Authorization because of the assignment to LS Holdings of all such obligations.

ORDER   5–

1    Mot. for Summary Judgment, docket no. 39.  Plaintiff cross-moves the Court for Partial

2    Summary Judgment to extinguish several of Defendant's affirmative defenses.  Mot. for

3    Partial Summary Judgment, docket no. 41.

4    **1. Ripeness.**

5    Although Defendant failed to list ripeness/declaratory judgment as an affirmative

6    defense in its Amended Answer, docket no. 48, the Court must consider whether it has

7    jurisdiction over this case.  The ripeness doctrine prevents premature adjudication and is aimed

8    at cases that do not yet have a concrete impact upon the parties.  See Thomas v. Union Carbide

9    Ag. Prod. Co., 473 U.S. 568, 580 (1985).  There is no subject matter jurisdiction to grant

10   declaratory relief as to rights or liabilities that do not yet exist or are not certain to arise.  Calderon

11   v. Ashmus, 523 U.S. 740, 746-747 (1998).

12   Under Washington law, "a broker is entitled to his commission when he produces a

13   purchaser who is ready, able, and willing to purchase upon the terms required."  Bloom v.

14   Christensen, 18 Wn.2d 137, 142 (1943).  "The rule applies even though the sale is not

15   consummated by the owner or is consummated by him upon terms different from those

16   stipulated in the brokerage agreement."  Id.  Unless a real estate broker and owner expressly

17   stipulate otherwise, the broker is entitled to his commission upon completion of negotiations

18   irrespective of whether or not the contract negotiated is actually completed, so long as the

19   broker was not at fault for the contract not being carried out. Id. at 143-44.  See also White

20   & Bollard, Inc. v. Goodenow, 58 Wn.2d 180, 187 (1961) ("When a realestate (sic) broker

21   has procured a prospective purchaser who is accepted by the seller, and the seller promises to

22   pay the broker a certain commission for services rendered, the broker has earned the

23   commission and the promise to pay it may be enforced....").

24   Here, Plaintiff procured eighty-nine (89) ready, willing, and able purchasers at the

25   price and terms of seller Defendant.  Therefore, even though the sales have not yet closed,

26   Plaintiff's claims are ripe for adjudication.

ORDER   6–

## 2. Whether declarations contradict deposition testimony.

Defendant asserts that the depositions of Torgerson and Miller, both independent contractors working as real estate agents for Plaintiff, contradict their declarations. Response, at 10-11.  Defendant claims that Torgerson and Miller testified that the November 2003 Lincoln Square Agreement required Plaintiff to obtain new contracts for all prospective purchasers and that LS Holdings would compensate Plaintiff for obtaining those contracts. Id. at 11.  Torgerson's declaration, however, does not contradict her deposition testimony. Torgerson testified that Plaintiff intended to procure new purchase and sale agreements for all condominium units after negotiating the November 2003 Lincoln Square Agreement. Torgerson never stated that such negotiations would release Defendant of liability under the November 2000 Letter of Authorization.  See Torgerson Decl., at 3-6; Dembowski Decl., Ex. E, at 84-85 (Torgerson Dep.).  Miller's declaration is also consistent with his deposition testimony.  Miller stated in his deposition that LS Holdings would pay him commissions for procuring purchase and sale agreements under the November 2003 Lincoln Square Agreement, but he also expressed some confusion regarding who would be responsible for paying commissions for purchase and sale agreements procured under the November 2000 Letter of Authorization.  Dembowski Decl., Ex. O, at 23-24 (Miller Dep.).  Miller made a similar statement in his declaration.  Miller Decl., docket no. 44, at 1-4.  Accordingly, the Court DENIES Defendant's motion to strike the declarations of Torgerson and Miller.

## 3.  Defendant's Motion for Summary Judgment, docket no. 39, and Plaintiff's Motion for Partial Summary Judgment, docket no. 41.

Summary judgment is appropriate if the moving party demonstrates there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The moving party bears the initial burden to show an absence of a genuine issue of material fact, but once that burden is met, the burden shifts to the non-moving party to show the existence of an issue of fact regarding an element essential to that party's case and

ORDER  7–

1   on which that party would bear the burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477

2   U.S. 317, 323-24 (1986).  To successfully rebut a motion for summary judgment, Rule 56(e)

3   requires the non-moving party to go beyond the pleadings and its own affidavits and

4   designate "specific facts showing that there is a genuine issue for trial."  <u>Id.</u> at 324.  <u>See also</u>

5   <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 249 (1986).  The court's job is not to weigh the

6   truth of the evidence but to determine whether there is a genuine issue for trial.  <u>Anderson</u>,

7   477 U.S. at 249.

8       Defendant moves for summary judgment based on several theories.  Defendant argues

9   that: (1) there was a novation of Plaintiff's November 2000 Letter of Authorization with

10  Defendant; (2) the November 2003 Lincoln Square Commission Agreement between Plaintiff

11  and LS Holdings discharged Defendant of any liability as a surety of LS Holding's

12  performance; (3) Plaintiff waived its right to collect from Defendant under the November

13  2000 Letter of Authorization; (4) estoppel prevents Plaintiff from recovery; and (5) Plaintiff

14  cannot successfully argue for recovery under quantum meruit and unjust enrichment because

15  of the statute of frauds.

16      Plaintiff moves the Court to dismiss the following defenses as a matter of law: (1)

17  ripeness/declaratory judgment; (2) substituted contract; (3) novation; (4) waiver; (5)

18  estoppel; (6) statute of frauds; (7) agreement to agree; (8) failure of a condition precedent

19  and/or subsequent; (9) impracticability or impossibility; (10) accord and satisfaction and/or

20  performance; (11) failure or lack of consideration; and (12) real party in interest.  Plaintiff

21  moves the Court to conclude that the eighty-nine (89) purchasers identified in the August

22  2003 assignment between Defendant and LS Holdings were procured during the listing

23  period set forth in the 2000 Letter of Authorization and Addendum.

24          A.  Novation.

25      An assignment of a contract or of "all rights under the contract" is to be interpreted as

26  an assignment of the assignor's rights and a delegation of his unperformed duties under the

ORDER  8–

1    contract.  Fay Corp. v. Bat Holdings I, Inc., 646 F.Supp. 946, 948 (W.D. Wash. 1986).

2    However, "an assignor's intention that the assignee be substituted for him or her is not

3    completely effective unless the obligor of the assigned rights... assents, thus creating a

4    novation."  Id.  Novation means substitution.  A novation "may be either the substitution of a

5    new obligation for an old one between the same parties with intent to displace the old

6    obligation with the new, or the substitution of a new debtor for the old one with intent to

7    discharge the old debtor."  Sutter v. Moore Inv. Co., 30 Wash. 333, 336 (1902).  To find a

8    novation, a court must find: (1) a mutual agreement; (2) among all parties concerned; (3) for

9    the discharge of a valid existing obligation; (4) by the substitution of a new valid obligation

10   or substitution of one party for another.  MacPherson v. Franco, 34 Wn.2d 179, 182 (1949).

11   If A owes B a sum of money, and C agrees to pay the debt of A to B, and B agrees to accept

12   C instead of A as payor of the debt, and to discharge A from his original obligation, that is a

13   novation.  Sutter, 30 Wash. at 333.  Liability under an assignment or novation may be

14   appropriately decided on summary judgment.  Fay Corp., 646 F.Supp. at 948.

15          Here, the 2003 Lincoln Square Purchase and Sale Agreement between Defendant and

16   LS Holdings provided that LS Holdings would pay fifty percent (50%) of commissions due

17   to Plaintiff for purchase and sale agreements procured by Defendant under the November

18   2000 Letter of Authorization.  McGlothin Decl., Ex. H, at 16, section vii (PSA).  The

19   Agreement stated, however, that LS Holding's obligation would not exceed $150,000.  Id.

20   The Court concludes, as a matter of law, that the Purchase and Sale Agreement between

21   Defendant and LS Holdings did not act as an express novation of Defendant's obligations

22   under the November 2000 Letter of Authorization.  Plaintiff was not a party to the August

23   2003 agreement and did not expressly assent to a substitution.  To further address novation,

24   the Court must determine whether Plaintiff otherwise agreed to accept LS Holdings as the

25   payor and to release Defendant of liability.  Defendant argues that a novation occurred when

26   Plaintiff and LS Holdings negotiated the November 2003 agreement.

ORDER   9–

1   <u>i.  Whether the November 2003 Lincoln Square Commission Agreement</u>
2   <u>replaced the November 2000 Letter of Authorization and created a</u>
    <u>novation that released Defendant of liability.</u>

3       The parties agree that Plaintiff and LS Holdings entered into a contract in November

4   of 2003 that governed the real estate commissions owed to Plaintiff by LS Holdings.  <u>See</u>

5   Torgerson Decl., Ex. G (Lincoln Square Commission Agreement).  The issue here is whether

6   the November 2003 Lincoln Square Commission Agreement between Plaintiff and LS

7   Holdings relieved Defendant of any liability under the November 2000 Lincoln Square

8   Commission Agreement.

9       The language of the November 2003 contract clearly and unambiguously relieves *LS*

10  *Holdings* of any and all obligations under the November 2000 Letter of Authorization to pay

11  sales commissions to Plaintiff.  The November 2003 contract expressly states that "Owner

12  and Owner's affiliates, including without limitation LS Holdings," shall not owe Plaintiff any

13  commissions, "notwithstanding any other agreement or agreements entered into with any

14  prior owner."  <u>Id.</u> at 5 (Lincoln Square Agreement).  The November 2000 Letter of

15  Authorization constitutes an "other agreement."  As stated by James Melby, a representative

16  for LS Holdings, LS Holdings specifically referenced "the old agreement in our new letter

17  agreement."  McGlothin Decl., Ex. U, at 22 (Melby Dep.).

18      The November 2003 Lincoln Square Commission Agreement does not, however,

19  unambiguously relieve *Defendant* of liability under the November 2000 Letter of

20  Authorization.  There is no evidence that Defendant was an "affiliate" of the Owner or LS

21  Holdings or that Plaintiff considered Defendant an affiliate and, thereby, intended to release

22  Defendant.  A principle of contract interpretation requires that words used by parties must be

23  given their plain and ordinary meaning.  <u>Beans v. Chohonis</u>, 740 So.2d 65, 67 (Fla. Dist. Ct.

24  App. 1999).  The dictionary offers plain and ordinary meanings of words.  <u>Id.</u>  Only when

25  the contract in question contains a glossary of terms will a different meaning be recognized.

26  <u>Id.</u>  <u>Also</u> <u>see</u> <u>Heritage Res., Inc. v. Nationsbank</u>, 939 S.W.2d 118, 121 (Tex. 1996) ("We give

ORDER   10–

terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense."); <u>Preston Trucking Co. v. Carolina Cas. Ins. Co.</u>, 712 F.Supp. 1208, 1212 (Pa. D. 1989) (the term "affiliate" was given its plain and ordinary meaning).  "Affiliate" is defined as "a corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation."  BLACK'S LAW DICTIONARY 63 (8th ed. 2004).  Given its plain and ordinary meaning, the Court concludes that Defendant is not an "affiliate" of LS Holdings.

Plaintiff denies that the November 2003 Lincoln Square Commission Agreement with LS Holdings in any way discharged Defendant's obligations under the November 2000 Letter of Authorization.  The November 2003 Lincoln Square Commission Agreement does not mention Defendant or indicate in any way that Defendant was no longer liable for sales commissions under the November 2000 Letter of Authorization.  <u>See</u> Torgerson Decl., Ex. G (Lincoln Square Agreement).  In addition, Plaintiff contends that the November 2003 Lincoln Square Commission Agreement only controlled commissions for transactions closed <u>after</u> November 7, 2003.  <u>Id.</u> at 4, ¶ 12.  Plaintiff argues that the November 2000 Letter of Authorization controlled commissions for condominium sales <u>before</u> the November 7, 2003, contract was negotiated.  <u>Id.</u>  Plaintiff's interpretation is correct.  Therefore, the Court concludes that the November 2003 Lincoln Square Commission Agreement between Plaintiff and LS Holdings did not operate as an express novation of the November 2000 Letter of Authorization.

<u>ii.  Whether Plaintiff, by its conduct, agreed to accept LS Holdings as a substitute creditor for Defendant and to release Defendant of liability.</u>

Defendant argues that the Court should find an implied novation because Plaintiff, by its conduct, agreed to accept LS Holdings as a substitute creditor for Defendant and to release Defendant of liability to pay commissions under the November 2000 Letter of

ORDER  11–

1   Authorization.[1]  No Washington court has ever found an implied novation.  Defendant cites

2   three cases for the proposition that Washington recognizes implied novation, but the cases do

3   not precisely reflect such a holding.  See Fay Corp., 646 F. Supp. at 950; Mut. Reserve

4   Assoc. v. Zeran, 152 Wash. 342, 349 (1929); Sutter, 30 Wash. at 336.

5          Nationwide, courts have widely accepted implied novation as a legitimate basis for

6   legal recovery.  See, e.g., Robinson v. Guar. Trust Life Ins. Co., 389 F.3d 475, 479-80 (5th

7   Cir. 2004) ("Under Mississippi law, a novation may be express or implied."); Jacobson v.

8   Stern, 96 Nev. 56, 61 (1980) (assent for implied novation may be inferred from acceptance of

9   part performance by new obligor, "if the performance is made with the understanding that a

10  complete novation is proposed"); Orlando Orange Groves Co. v. Hale, 119 Fla. 159, 176

11  (1935) ("the assent to, and the acceptance of, the terms of a novation of a contract need not

12  be shown by express words to that effect, but the same may be implied from the facts and

13  circumstances attending the transaction and the conduct of the parties thereafter"); Barton v.

14  Perryman, 265 Ark. 228, 232 (1979) ("intention need not be expressly declared, but may be

15  found upon examining the surrounding circumstances"); Commercial Credit Corp. v. Brown,

16  471 S.W.2d 914, 919 (Tex. Civ. App. 1971) ("An express release is not necessary to effect a

17  discharge of an original obligation by novation.  The intent or agreement to accept the new

18  obligation in lieu and in discharge of the old one may be inferred from the facts and

19  circumstances and conduct of the parties."); W. Crawford Smith, Inc. v. Watkins, 425

20  S.W.2d 276, 279 (Ct. App. Missouri 1968) (novation may be implied "from the facts and

21  circumstances attending the transaction as well as the conduct of the parties thereafter");

22

23  [1] Defendant also argues that Plaintiff admitted in its briefs that it released Defendant of
    liability.  Defendant argues that Plaintiff should be bound by those admissions.  "Statements
24  of fact contained in a brief *may* be considered admissions of the party in the discretion of the
    district court."  Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 227 (9th Cir. 1988)
25  (emphasis in original).  However, nothing Plaintiff stated in its briefing constitutes an
    admission that Defendant was released from its obligations under the November 2000 Letter
26  of Authorization

ORDER   12–

1   Beck v. Mfr. Hanover Trust Co., 481 N.Y.S.2d 211, 218 (1984) (implied novation may be

2   shown by clearly showing intent for novation).

3        Courts that recognize implied novation hold parties to a very high burden of proof.  In

4   New York, courts have stated that a party asserting implied novation must show a "clear and

5   definite intention" for a novation.  Beck, 481 N.Y.S.2d at 218.  A novation must never be

6   presumed.  Allstate Ins. Co. v. Clarke, 471 S.W.2d 901, 907 (Tex. Civ. App. 1971); Beck,

7   481 N.Y.S.2d at 218.  The intention of the parties must be clear.  Allstate Ins. Co., 471

8   S.W.2d at 907.  In Mississippi, an implied novation "requires substantial proof."  Robinson,

9   389 F.3d at 480.  The Court of Appeals for the Fifth Circuit stated that implied novation

10  must be shown by a "clear preponderance" of the evidence.  Travis v. Cent. Sur. & Ins.

11  Corp., 117 F.2d 595, 596 (5th Cir. 1941).  The party arguing for implied novation bears the

12  burden of proof.  Id.  Where the terms of the agreement of the parties are clear and

13  unequivocal, a court may rule on implied novation as a matter of law.  W. Crawford Smith,

14  Inc., 425 S.W.2d at 279.[2]

15       Even assuming Washington State recognized implied novation, Defendant cannot

16  prevail in this case.  Defendant argues that Plaintiff's acceptance of payments from LS

17  Holdings constituted a novation.  However, Defendant cannot establish that the parties had a

18  clear and definite intention to effect an implied novation.  Plaintiff looked only to LS

19  Holdings for performance of the November 2000 Letter of Authorization after the sale of the

20  Lincoln Square development to LS Holdings was final.  Beginning August 28, 2003, the day

21  after closing of the sale to LS Holdings, Plaintiff billed LS Holdings for its expenses under

22  the November 2000 Letter of Authorization.  See Dembowski Decl., Ex. L (invoice from

23  Plaintiff to LS Holdings for expenses from 8/28/2003 - 11/10/2003); Ex. M (invoice from

---

25  [2] At oral argument, the Court requested supplemental briefing from the parties regarding
    the possibility of certifying the implied novation question to the Washington State Supreme
    Court.  The Court has reviewed Plaintiff's memorandum opposing certification, docket no. 65,
26  and Defendant's memorandum in support of certification, docket no. 66, and concludes that
    certification is not necessary to resolve this issue.

ORDER   13–

1   Plaintiff to LS Holdings for expenses after closing date).  Defendant further argues that,

2   consistent with assumption of the November 2000 Letter of Authorization, LS Holdings

3   performed as the "Seller" pursuant to the Agreement and paid the expenses billed to it by

4   Plaintiff.  Id. at Ex. N (LS Holdings check paying Plaintiff's invoices for expenses after

5   8/27/2003).  Simply put, Plaintiff's acceptance of payments from LS Holdings cannot

6   demonstrate a clear intention to release Defendant of liability.  Plaintiff never gave any

7   indication that it intended to look solely to LS Holdings for commissions under the

8   November 2000 Letter of Authorization.

9        Torgerson, an independent real estate contractor for Plaintiff during the time in

10  question who helped negotiate the November 2003 Lincoln Square Commission Agreement

11  between Plaintiff and LS Holdings, claims that "Landover certainly had no knowledge that

12  [Defendant] assigned its rights and delegated its duties, or that LS Holdings assumed

13  Bellevue Master's duties, under the 2000 Letter of Authorization, until after the November 7,

14  2003 Lincoln Square Commission Agreement was signed and terminated by LS Holdings."

15  Torgerson Decl., at 2-3, ¶ 6.  Torgerson also claims that neither she nor Plaintiff understood

16  that LS Holdings assumed the November 2000 Letter of Authorization when the November

17  2003 Lincoln Square Commission Agreement with LS Holdings was negotiated.  Id. at 3, ¶

18  10.  If Torgerson or Plaintiff did have such an understanding, Torgerson claims that Plaintiff

19  would not have signed the November 2003 Lincoln Square Commission Agreement.  Id.

20  Additionally, Torgerson stated that neither she nor Plaintiff ever consented or assented to

21  release or discharge Defendant from liability under the November 2000 Letter of

22  Authorization.  Id. at 3, ¶ 11.  Michael Miller ("Miller"), another of Plaintiff's negotiators for

23  the LS Holdings contract, also stated that he did not think Plaintiff was looking only to LS

24  Holdings for compensation.  Dembowski Decl., at Ex. P, 38 (Miller Dep.).  The statements

25  by Torgerson and Miller bolster Plaintiff's argument that it had no clear intention to release

26  Defendant of liability.

ORDER   14–

1    The Court concludes, as a matter of law, that Plaintiff's conduct would not have

2    constituted an implied novation even if Washington State recognized implied novation as a

3    valid legal doctrine.  Accordingly, the Court DENIES Defendant's Motion for Summary

4    Judgment, docket no. 39, as to the issue of novation.  The Court GRANTS Plaintiff's Motion

5    for Partial Summary Judgment, docket no. 41, as to the issue of novation.

6                    B. Suretyship.

7        As an alternative to its novation defense, Defendant argues that, as a result of the sale

8    of Lincoln Square to LS Holdings, the Buyer (LS Holdings) became the principal and

9    Defendant became a "surety" for LS Holdings' obligations.  Defendant argues that it was

10   discharged as a surety when Plaintiff and LS Holdings negotiated a new contract in

11   November 2003.  Defendant fails, however, to show how it became a surety.

12       A surety is a "a person who is primarily liable for the payment of another's debt or the

13   performance of another's obligation."  BLACK'S LAW DICTIONARY 1482 (8th ed. 2004).  "A

14   surety is usually bound with his principal by the same instrument, executed at the same time

15   and on the same consideration."  GEORGE W. BRANDT, THE LAW OF SURETYSHIP AND

16   GUARANTY, § 2, at 9 (3d ed. 1905).  A surety is an original promisor and debtor from the

17   beginning.  A surety's obligation is not conditioned upon another's default.  Id.  A guarantor,

18   on the other hand, is liable to a creditor only if the debtor does not meet the duties owed to

19   the creditor.  See BLACK'S LAW DICTIONARY 724 (8th ed. 2004).  A guarantor makes a

20   separate contract in which the principal does not join.  BRANDT, § 2 at 9.  The terms surety

21   and guarantor are often confused though they have different meanings.  Id.

22       Here, Defendant was primarily liable to Plaintiff under the November 2000 Letter of

23   Authorization.  Defendant and LS Holdings were not bound to Plaintiff under the same

24   contract and for the same consideration.  Defendant never contracted with Plaintiff to be a

25   surety.  Defendant's suretyship defense fails as a mater of law.  Accordingly, the Court

26

ORDER   15–

1    DENIES Defendant's Motion for Summary Judgment, docket no. 39, as to the issue of

2    suretyship.  The Court GRANTS summary judgment in Plaintiff's favor as to suretyship.[3]

3                    C.  Waiver.

4          Defendant also moves the Court for summary judgment on the theory that Plaintiff

5    waived its right to recover from Defendant.  A waiver is the intentional and voluntary

6    relinquishment of a known right.  Jones v. Best, 134 Wn.2d 232, 241 (1998); Sherman v.

7    Lunsford, 44 Wn.App. 858, 862-63 (1986).  Waiver may result from an express agreement or

8    may be inferred from "circumstances indicating an intent to waive."  Jones, 134 Wn.2d at

9    241, citing Bowman v. Webster, 44 Wn.2d 667, 669 (1954).  To establish an implied waiver,

10   unequivocal acts or conduct must evidence an intent to waive.  Id.  A court should not infer

11   waiver from doubtful or ambiguous factors.  Id.  Silence alone never constitutes a waiver

12   unless a party has an obligation to speak.  Voelker v. Joseph, 62 Wn.2d 429, 436 (1963).

13   "The intention to relinquish the right or advantage must be proved, and the burden is on the

14   party claiming waiver."  Jones, 134 Wn.2d at 241-42, citing Rhodes v. Gould, 19 Wn.App.

15   437, 441 (1978).

16         In this case, the parties agree that there was no express waiver.  No document exists

17   stating that Plaintiff waived its right to recover from Defendant under the November 2000

18   Letter of Authorization.  Plaintiff's conduct also did not constitute an implied waiver.  As

19   stated above, Plaintiff's acceptance of payments from LS Holdings did not constitute

20   unequivocal conduct evidencing an intent to relinquish its rights against Defendant.

21   Additionally, even if Plaintiff did not reiterate its intent to collect commissions from

22   Defendant under the November 2000 Letter of Authorization, silence alone does not

23   _____

24   [3] Plaintiff did not move for summary judgment as to Defendant's suretyship defense in
     its motion, docket no. 41.  However, the suretyship defense was discussed in Plaintiff's

25   response brief, docket no. 50, and the Court concludes that there are no material issues
     of fact to be resolved.  See Kassbaum v. Steppenwolf Productions, Inc., 236 F.3d 487,

26   494-95 (9th Cir. 2000) (courts have power to grant summary judgment *sua sponte*
     where record reveals no genuine issue of material fact and there has been adequate
     opportunity to present opposition).

     ORDER   16–

1  constitute a waiver.  Voelker, 62 Wn.2d at 436.  Accordingly, the Court DENIES

2  Defendant's Motion for Summary Judgment, docket no. 39, as to the issue of waiver.  The

3  Court GRANTS Plaintiff's Motion for Summary Judgment, docket no. 41, as to the issue of

4  waiver.

5          D.  Estoppel.

6          Defendant argues that Plaintiff should be estopped from recovery because Plaintiff

7  had a duty to inform Defendant that Defendant remained liable under the November 2000

8  Letter of Authorization.  Defendant argues that Plaintiff did not reserve its right to seek sales

9  commissions from Defendant and, therefore, lost such rights when Plaintiff negotiated the

10  November 2003 Lincoln Square Commission Agreement with LS Holdings.  The issue here

11  is whether Plaintiff had a duty to reiterate the terms of its listing agreement to Defendant

12  when Plaintiff negotiated a new contract with LS Holdings.

13          The elements of equitable estoppel are: (1) an admission, statement, or act

14  inconsistent with a claim afterward asserted; (2) action by another in reliance upon that act,

15  statement, or admission; and (3) injury to the relying party from allowing the first party to

16  contradict or repudiate the prior act, statement, or omission.  Bd. of Regents of the Univ. of

17  Washington v. City of Seattle, 108 Wn.2d 545, 551 (1987).  Silence may constitute an

18  admission where a party has a duty to speak.  Ticor Title Ins. Co. of California, Inc. v.

19  Nissell, 73 Wn.App. 818, 823 (1994), citing Saunders v. Lloyd's of London, 113 Wn.2d 330,

20  340 (1989).

21          RCW 18.86.030 through RCW 18.86.060 prescribe all of the fiduciary duties

22  maintained by a real estate agent.  RCW 18.86.040 states that a seller's agent has a duty to

23  "timely disclose to the seller any conflicts of interest," and RCW 18.86.050 states that a

24  buyer's agent has a duty to "timely disclose to the buyer any conflicts of interest."  The

25  statutes do not expressly state what constitutes a conflict of interest or whether an agent

26  maintains the duty to reiterate the terms of a listing agreement.  The Washington Court of

Appeals has held that "there is no legal basis for asserting that the seller-broker agency

ORDER   17–

1    relationship extends beyond the time when the broker has earned his commission." Pilling v.

2    E & Pac. Enters. Trust, 41 Wn.App. 158, 165 (1985).  Under Washington law, a real estate

3    agent has earned his commission as soon as the agent provides a ready, willing, and able

4    buyer for the seller.  Bloom, 18 Wn.2d at 142.

5        Here, Plaintiff secured eighty-nine (89) condominium purchase and sale agreements

6    for Defendant before Defendant sold the development to LS Holdings and before Plaintiff

7    contracted with LS Holdings.  Under Washington law, Plaintiff earned its commission as

8    soon as those eighty-nine (89) purchasers were procured.  Plaintiff, therefore, did not owe

9    Defendant any fiduciary duties after the purchase and sale agreements were provided to

10   Defendant, and there is no basis to conclude Plaintiff had a duty to remind Defendant of the

11   ongoing obligation.  Nor is there any evidence that Defendant took "action" in reliance on

12   Plaintiff's conduct.  Accordingly, the Court DENIES Defendant's Motion for Summary

13   Judgment, docket no. 39, as to the issue of estoppel.  The Court GRANTS Plaintiff's Motion

14   for Partial Summary Judgment, docket no. 41, as to the issue of estoppel.

15                      E.  Quantum Meruit and Unjust Enrichment.

16       In its amended complaint, Plaintiff requested relief on the basis of quantum meruit

17   and unjust enrichment.  See Amended Complaint, docket no. 36, at 4.  Defendant now moves

18   the Court to conclude, as a matter of law, that Plaintiff cannot recover under these theories.

19   Defendant asserts that Washington's statute of frauds precludes such recovery.

20       Washington's statute of frauds states:

21       In the following cases, specified in this section, any agreement, contract
         and promise shall be void, unless such agreement, contract or promise,
22       or some note or memorandum thereof, be in writing, and signed by the
         party to be charged therewith, or by some person there unto by him
23       lawfully authorized, that is to say... (5) an agreement authorizing or
         employing an agent or broker to sell or purchase real estate for
24       compensation or a commission.

25   RCW 19.36.010.  The Supreme Court of Washington has made it clear that commissions for

26   the sale of property fall within the statute of frauds.  Cushing v. Monarch Timber Co., 75

     Wash. 678, 684-88 (1913).  In Cushing, the Supreme Court held that real estate commissions
     ORDER   18–

1    for the sale of timber, which pertains to realty, falls within the statute of frauds.  Id. at 684.

2    The Court explained that to remove commissions from the statute of frauds would nullify the

3    statute itself.  Id. at 687, citing Keith v. Smith, 46 Wash. 131, 134 (1907).  The Supreme

4    Court of Washington also expressly declared that "there can be no recovery upon the

5    quantum meruit or upon an implied contract to pay for services rendered" in the sale of

6    property.  Id.

7         The parties here do not dispute that Plaintiff was a real estate agency hired to procure

8    sales of real property.  The November 2000 Letter of Authorization constitutes the only

9    contract that described the duties and obligations that Plaintiff and Defendant owed each

10   other.  The contract included the means by which Plaintiff would receive commissions for

11   the sale of condominiums.  No separate oral or written agreement regarding commissions

12   existed.  Plaintiff claims that its right to recover commissions is an interest in personal

13   property and, therefore, does not fall under the statute of frauds.  Plaintiff's argument is

14   without merit.[4]  Under Washington law, Plaintiff's right to receive commissions clearly falls

15   within the statute of frauds.  Therefore, Plaintiff cannot recover under non-contractual

16   theories of law.

17        Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment, docket

18   no. 39, on the issues of quantum meruit and unjust enrichment.  The Court DENIES

19   Plaintiff's Motion for Partial Summary Judgment, docket no. 41, as to the issues of quantum

20   meruit and unjust enrichment.

21             F.  Ripeness/declaratory judgment.

22   _____

23   [4] Plaintiff cites Miller v. McCamish, 78 Wn.2d 821 (1971), for the proposition that the
     statute of frauds does not preclude recovery for real estate commissions under the theories
24   of quantum meruit or unjust enrichment.  The Miller case, however, deals with a transaction
     in which there was only an oral agreement and partial performance occurred.  The court
25   held only that a remedy of specific performance may be available upon proof of an oral
     contract.  Miller, 78 Wn.2d at 830.  No express contract existed in that case, as we have
26   here.  The court did not intend to extinguish the general requirements of the statute of
     frauds.

1   Defendant filed an Amended Answer after Plaintiff filed its Motion for Partial

2   Summary Judgment.  Defendant does not continue to list ripeness/declaratory judgment as an

3   affirmative defense in its Amended Answer.  See Amended Answer, docket no. 48.  The

4   Court STRIKES AS MOOT Plaintiff's Motion for Summary Judgment, docket no. 41, as to

5   the issue of ripeness/declaratory judgment.[5]

6           G.  Substituted contract.

7   The Court finds that Defendant's affirmative defense of substituted contract fails as a

8   matter of law.  "The term 'substituted contract' is used when one or more of the original

9   parties but no new parties are involved in the transaction."  CORBIN ON CONTRACTS, §

10  71.1(2), Vol. 13 (2005).  Here, there were only two parties involved in the original

11  November 2000 Letter of Authorization: Plaintiff and Defendant.  Defendant now claims that

12  LS Holdings, a third party, owes Plaintiff the commissions under the November 2000 Letter

13  of Authorization.  A substituted contract does not include a third party, as is the case here.

14  Accordingly, the Court GRANTS Plaintiff's Motion for Summary Judgment, docket no. 41,

15  as to the issue of substituted contract.

16          H.  Agreement to agree.

17  Defendant asserts in its Amended Answer that the November 2000 Letter of

18  Authorization is a mere agreement to agree and is not binding on the parties with respect to

19  an obligation to pay real estate commissions.  Amended Answer, at ¶ 8.6.  Plaintiff argues

20  that Defendant should be precluded from asserting this defense because the November 2000

21  Letter of Authorization is not merely an agreement to agree but is a binding contract for the

22  payment of commissions.  The Ninth Circuit has held that where parties sign a general listing

23  agreement that outlines terms and conditions of a broker's employment, the commission

24  agreement entitles the broker to a commission even if sales are never completed.  In re

25  Eastview Estates II, 713 F.2d 443, 448 (9th Cir. 1983).  Here, the November 2000 Letter of

26

---

[5] See Section 1, "Ripeness" for analysis regarding the Court's subject matter jurisdiction over Plaintiff's claims.

ORDER   20–

1  Authorization served as a listing agreement that provided for commissions.  Defendant does

2  not dispute Plaintiff's argument in Defendant's Response.  See Defendant's Response, at 25-

3  28 (heading suggests Defendant will address "agreement to agree" defense, but Defendant

4  fails to rebut Plaintiff's arguments).  The Court GRANTS Plaintiff's Motion for Partial

5  Summary Judgment, docket no. 41, as to the issue of agreement to agree.  Defendant is

6  precluded from asserting this defense at trial.

7              I.  Failure of a condition precedent and/or subsequent.

8        Defendant asserts that it is not required to pay Plaintiff any commission under the

9  November 2000 Letter of Authorization because the contract included an implied condition

10 precedent that Defendant would build the Lincoln Square project, sell the condominium

11 units, and collect proceeds from those sales.  Amended Answer, at ¶ 8.7.  Defendant

12 maintains that because it sold the project to LS Holdings and did not sell or receive

13 compensation for the sale of the condominium units, it is not bound to pay any commission

14 to Plaintiff under the November 2000 contract.  Id.  Plaintiff argues that an owner need not

15 complete a development project in order to owe commissions to a real estate broker under a

16 sufficient real estate commission contract.  Plaintiff requests that the Court preclude

17 Defendant from asserting that the contract included a condition precedent and/or subsequent

18 as an affirmative defense

19       Under Washington law, "a broker is entitled to his commission when he produces a

20 purchaser who is ready, able, and willing to purchase upon the terms required."  Bloom, 18

21 Wn.2d at 142.  "The rule applies even though the sale is not consummated by the owner or is

22 consummated by him upon terms different from those stipulated in the brokerage

23 agreement."  Id.  Unless a real estate broker and owner expressly agree otherwise, the broker

24 is entitled to his commission upon completion of negotiations irrespective of whether or not

25 the contract negotiated is actually completed so long as the broker was not at fault for the

26 contract not being carried out.  Id. at 143-44.  See also White & Bollard, Inc., 58 Wn.2d at

187 ("When a realestate (sic) broker has procured a prospective purchaser who is accepted

ORDER   21–

1   by the seller, and the seller promises to pay the broker a certain commission for services

2   rendered, the broker has earned the commission and the promise to pay it may be

3   enforced....”).

4       Where a purchase and sale agreement includes a condition precedent and/or

5   subsequent, the real estate broker cannot receive a commission for that sale unless the

6   condition is met.  White & Bollard, Inc., 58 Wn.2d at 187.  A condition precedent and/or

7   subsequent may be express, implied, or constructive.  Ross v. Harding, 64 Wn.2d 231, 236

8   (1964).  “Conditions precedent are those facts and events, occurring subsequently to the

9   making of a valid contract, that must exist or occur before there is a right to immediate

10  performance, before there is a breach of contract duty, before the usual judicial remedies are

11  available.”  Id.  Whether a provision is a condition precedent depends on the intent of the

12  parties, which should be ascertained from a fair and reasonable construction of the contract

13  language in light of all of the surrounding circumstances.  Id.

14      Under the November 2000 Letter of Authorization, Defendant contracted to remain

15  obligated to pay Plaintiff its commissions for all condominium sales for which Plaintiff

16  retained purchase and sale agreements or written offers prior to the date the Letter of

17  Authorization was terminated.  See Torgerson Decl., at Ex. C.  The Letter of Authorization

18  did not expressly require that the sales close before the contract was terminated in order for

19  Plaintiff to be able to collect its commissions from Defendant.  The contract did not include

20  any express conditions precedent and/or subsequent.

21      The language of the contract is clear, showing that Defendant is obligated to pay

22  Plaintiff commission for sales procured during the listing time of the November 2000 Letter

23  of Authorization and there is no evidence from which an implied condition precedent may be

24  imposed.  Accordingly, the Court GRANTS Summary Judgment to Plaintiff as to the issues

25  of condition precedent and/or subsequent.

26

ORDER   22–

J.  Impracticability or impossibility.

Defendant asserts as an affirmative defense that it is not bound under the November 2000 Letter of Authorization because Defendant no longer owns the Lincoln Square project and cannot sell the condominiums to Plaintiff's purchasers.  See Amended Answer, at ¶ 8.8. Plaintiff argues that this defense is without merit because Plaintiff procured buyers during the time the listing agreement was valid.  Plaintiff requests that the Court deny Defendant the opportunity to assert impracticability or impossibility as an affirmative defense.

Washington recognizes the procuring cause of sale rule.  Under the procuring cause of sale rule, "when a party is employed to procure a purchaser and does procure a purchaser to whom a sale is eventually made, that party is entitled to a commission regardless of who makes the sale."  Prof'l 100 v. Prestige Realty, 100 Wn.App. 833, 836-37 (1996).  See also Willis v. Champlain Cable Corp., 109 Wn.2d 747, 755 (1988) ("Washington's procuring cause rule has been applied primarily in the real estate field in order to allow a broker or real estate agent to recover if his or her services have already been performed.").  However, where a written contract provides the manner in which commissions will be paid, the contract controls unless the contract is ineffective.  Prof'l 100, 100 Wn.App. at 837; Willis, 109 Wn.2d at 755.  In Willis, the court held that where a contract provided the manner in which a real estate commission contract could be terminated as well as how commissions would be awarded thereafter, the contract controlled.  109 Wn.2d at 755.

Here, the November 2000 Letter of Authorization provides that either party could terminate the agreement with thirty (30) days written notice.  Torgerson Decl., at Ex. C.  The contract expressly provides that Seller shall maintain liability for commissions "for sales on which signed purchase agreements or offers (written) have been submitted to Seller or Reservation Agreements have been received prior to the date of termination."  Id.  The parties do not dispute that Plaintiff procured purchase and sale agreements before August 2003, when Defendant sold the Lincoln Square project to LS Holdings.  Therefore, under the

ORDER   23–

1    express terms of the contract, Defendant owes Plaintiff commissions for the sales procured

2    during the listing agreement.  Defendant cannot show that it is impracticable or impossible

3    for Defendant to perform the payment of commissions earned by Plaintiff.  Accordingly, the

4    Court GRANTS Summary Judgment to Plaintiff as to the issues of impracticability and

5    impossibility.

6                    K.  Accord and satisfaction and/or performance.

7            Defendant asserts as an affirmative defense that an accord and satisfaction has

8    released Defendant of any and all obligations under the November 2000 Letter of

9    Authorization.  Amended Answer, at ¶ 8.9.  The three elements of accord and satisfaction

10   are: "(1) a bona fide dispute; (2) an agreement to settle that dispute; and (3) performance of

11   that agreement."  Ward v. Richards & Rossano, Inc., 51 Wn.App. 423, 429 (1988).

12   Defendant asserts that a bona fide dispute existed regarding who was liable to pay Plaintiff

13   commissions under the November 2000 Letter of Authorization and that the dispute was

14   settled by Plaintiff's subsequent contract with LS Holdings.  As stated above, Defendant

15   does not provide any evidence that Plaintiff intended for a party other than Defendant to be

16   liable for commissions under the November 2000 Letter of Authorization.  Neither can

17   Defendant establish that there was an "agreement" with Plaintiff to settle a bona fide dispute.

18   Accordingly, the Court GRANTS Plaintiff's motion for summary judgment as to the issue of

19   accord and satisfaction and/or performance.

20                    L.  Failure or lack of consideration.

21           Defendant's Amended Answer no longer lists failure or lack of consideration as an

22   affirmative defense.  Accordingly, the Court STRIKES AS MOOT Plaintiff's motion for

23   summary judgment as to the failure or lack of consideration defense.

24

25

26

ORDER   24–

1

                <u>M. Real party in interest.</u>

2

      Defendant stated as an affirmative defense that Plaintiff is not a real party in interest.

3

Amended Answer, at ¶ 8.13.  Defendant conceded, however, in its Response to Plaintiff's

4

motion that Defendant intended to strike this affirmative defense.  Response, at 24.

5

Accordingly, the Court GRANTS Summary Judgment to Plaintiff as to the issue of real party

6

in interest.

7

              <u>N. Eighty-nine (89) purchasers identified in the August 2003 assignment</u>

8

              <u>between Defendant and LS Holdings were procured during the listing period</u>
              <u>set forth in the 2000 Letter of Authorization and Addendum.</u>

9

10

      Plaintiff moves the Court to conclude as a matter of law that Plaintiff procured eighty-

11

nine (89) purchasers under the November 2000 Letter of Authorization.  The 2000 Letter of

12

Authorization makes Plaintiff the exclusive listing agent for the Lincoln Square project from

13

November 20, 2000, through December 31, 2003.  Torgerson Decl., at Ex. C.  Eighty-nine

14

(89) purchasers were in fact procured by Plaintiff during that time.  <u>Id.</u> at Ex. F (Spreadsheet

15

of Dates of Procured Contracts).  Defendant does not dispute that Plaintiff procured these

16

purchasers.  Defendant only contends that it does not remain liable to pay the commissions to

17

Plaintiff under the November 2000 Letter of Authorization.  Therefore, the Court GRANTS

18

Plaintiff's Motion for Summary Judgment, docket no. 41, as to this issue and finds that

19

eighty-nine (89) purchasers were procured by Plaintiff during the listing period set forth in

20

the 2000 Letter of Authorization.

21

    **CONCLUSION**

22

      For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART

23

Defendant's Motion for Summary Judgment, docket no. 39.  Defendant's Motion is

24

GRANTED as to its statute of frauds affirmative defense to Plaintiff's quantum meruit claim.

25

Defendant's Motion is DENIED as to its affirmative defenses of novation, suretyship,

26

waiver, and estoppel.  The Court GRANTS IN PART, DENIES IN PART, and STRIKES AS

ORDER   25–

1   MOOT IN PART Plaintiff's Motion for Summary Judgment, docket no. 41.  The Court

2   GRANTS summary judgment in favor of Plaintiff and dismisses the following affirmative

3   defenses: (1) substituted contract; (2) novation; (3) suretyship; (4) waiver; (5) estoppel; (6)

4   agreement to agree; (7) failure of a condition precedent and/or subsequent; (8)

5   impracticability or impossibility; (9) accord and satisfaction and/or performance; and (10)

6   real party in interest.  Plaintiff's Motion is DENIED as to Defendant's statute of frauds

7   defense.  Plaintiff's Motion is STRICKEN AS MOOT as to Defendant's ripeness and failure

8   or lack of consideration defenses.

9       IT IS SO ORDERED.

10      DATED this 6th day of January, 2006.

11

12

13

14          Thomas S. Zilly
            United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

ORDER   26–